**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KEVIN DALE KERST,

      Plaintiff,

v.                                       CIV-26-00011 JB/DLM

MICHELLE LUJAN GRISHAM, et al.,

      Defendants.

**DEFENDANT MATTHEW CHAVEZ'S MOTION TO DISMISS
PLAINTIFF'S VERIFIED AMENDED COMPLAINT FOR DECLARATORY,
INJUNCTIVE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Defendant, Matthew Chavez, in his individual capacity, through his attorney Robles, Rael,

& Anaya, P.C. (Luis Robles), states the following for his Motion to Dismiss Plaintiff's Verified

Amended Complaint for Declaratory, Injunctive and Monetary Relief and Demand for Jury Trial

("Plaintiff's Complaint").

**INTRODUCTION**

This lawsuit arises from the revocation of Plaintiff's Concealed Handgun License ("CHL")

by the New Mexico Department of Public Safety ("DPS"). The revocation of Plaintiff's CHL was

based on Plaintiff's prior conviction of assault with a deadly weapon. This prior conviction made

Plaintiff ineligible to be issued a CHL entirely. Plaintiff appealed the revocation of his CHL. As a

result, DPS scheduled and held several administrative hearings. At the time of these events,

Defendant Chavez was employed as DPS's Chief Legal Counsel. Plaintiff now files suit against

Defendant Chavez based on a number of alleged constitutional violations, namely, violations of his

First, Second, and Fourteenth Amendment rights.

Plaintiff neither overcomes Defendant Chavez's qualified immunity defense, nor establishes Defendant Chavez's personal participation in any of the alleged constitutional violations. Plaintiff has not shown a violation of his Second Amendment right by Defendant Chavez, because the Second Amendment does not guarantee an absolute right to a CHL. Further, Plaintiff does not demonstrate that any of Defendant Chavez's conduct rose to the level of a violation of his First, Second, or Fourteenth Amendment rights. For these reasons, Plaintiff fails to state a claim upon which relief can be granted. Accordingly, all claims against Defendant Chavez should be dismissed pursuant to Fed. R. Civ. P. 12(B)(6).

### STANDARD OF REVIEW FOR A MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, factual allegations in a Plaintiff's claim "must be enough to raise a right to relief above the speculative level," which "requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted) (internal quotations omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task." Id. at 679. In the context of a Section 1983 claim against multiple Government-official defendants, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" Id. at 676. In other words, for a Plaintiff's complaint to survive a Rule 12(b)(6) motion

to dismiss, the complaint must contain sufficient facts to establish each individual Government-official defendant's personal involvement in the alleged constitutional violation.

## STATEMENT OF FACTS

As alleged in Plaintiff's Verified Amended Complaint for Declaratory, Injunctive and Monetary Relief and Demand for Jury Trial ("Plaintiff's Complaint"), the following well-pleaded facts are accepted as true solely for the purposes of this motion.

Plaintiff's Complaint arises from the issuance and subsequent revocation of a CHL by DPS. At the time of the following events, Defendant Chavez was employed as Chief Legal Counsel for DPS. *See Plaintiff's Verified Amended Complaint for Declaratory, Injunctive and Monetary Relief and Demand for Jury Trial (filed April 8, 2026) [Doc. No. 28] ("Plaintiff's Complaint") at ¶ 91.* Plaintiff was issued a CHL on June 26, 2023, which was subsequently revoked by DPS on July 21, 2023. *See Id.*, at ¶¶ *5, 110.* The revocation of Plaintiff's CHL was based on his prior conviction of assault with a deadly weapon, in California in 1997. *See Id.*, at ¶¶ *127, 431.* Plaintiff's prior assault with a deadly weapon was "an offense that California law treats as a 'wobbler,'" which "is a narrow category of offense that may be prosecuted or punished as either a felony or a misdemeanor depending on the facts, the sentence imposed, and the court's later exercise of authority under California law." *See Id.*, at ¶¶ *121-122.* After the revocation of his CHL, Plaintiff submitted a written appeal to DPS on July 29, 2023. *See Id.*, at ¶ *169, 279.* As a result, DPS scheduled and held several in-person hearings for Plaintiff's appeal between August 28, 2023, and January 6, 2026. *See Id., at ¶¶ 202, 208, 213, 238, 288, 383, 386, 430.* Defendant Chavez was present at one of these hearings as DPS's Chief Legal Counsel. *See Id.*, at ¶¶ *257-267.*

3

Prior to the series of hearings, on August 1, 2023, Defendant Chavez sent an email to DPS's Concealed Carry Unit supervisor, Angie Cormier, in which he reviewed legal research on the validity of the revocation of Plaintiff's CHL. *See Exhibit 6 to Plaintiff's Complaint, at pp. 121-121.* This research essentially confirmed that DPS was correct to revoke Plaintiff's CHL. *See id.* The research explained that although Plaintiff's prior assault with a deadly weapon charge was dismissed, the conviction still remains. *See id.* As such, Plaintiff was ineligible for a CHL in New Mexico. *See id.* In his review, "Defendant Chavez expressly credited [the] research and stated that its factual findings and application of law were correct" in that Plaintiff's CHL was properly revoked. *See Plaintiff's Complaint at ¶ 486; See also Exhibit 6 to Plaintiff's Complaint, at pp. 121-121.*

The relevant administrative hearing was held on October 22, 2024. *See Plaintiff's Complaint at ¶ 238.* Prior to this hearing, Plaintiff "sent a written communication to Defendant Chavez requesting information on how to submit interrogatories and other discovery related to the revocation of his license." *Id.,* at ¶ *228.* Defendant Chavez did not respond to this communication from Plaintiff. *See id.,* at ¶ *232.* During the October 22, 2024, administrative hearing, "it became apparent that DPS counsel, including Defendant Chavez, had not reviewed Plaintiff's summary-of-evidence binder in advance and had not integrated it into a prepared administrative record." *Id.,* at ¶¶ *260, 303.* Additionally at the hearing, Plaintiff "raised the question whether interrogatories or other pre-hearing discovery were available, and Defendant Chavez stated, in substance, that he did not think such procedures were part of these hearings, that he had never heard of ordinary lawsuit-style discovery being used in them, and that if he were wrong he could be

corrected." *Id*., *at ¶ 257*. In "post-hearing discussion, Defendant Chavez stated, in substance, that even a governor's pardon would not restore concealed-carry eligibility because the conviction had occurred. Plaintiff corrected Defendant Chavez by directing him to New Mexico Attorney General Opinion 14-02. After reviewing the cited material, Chavez acknowledged that the opinion states, in substance, that a pardoned felony conviction is not itself sufficient grounds to deny a concealed handgun license if the person is otherwise qualified." *Id.*, *at ¶¶ 264-266*.

To summarize Defendant Chavez's conduct throughout Plaintiff's appeal process, "Defendant Chavez adopted internal legal research regarding California relief, treated Plaintiffs reduced and dismissed California record as still disqualifying, relied on Benns without accounting for Plaintiffs out-of-state relief, denied or disclaimed discovery procedures, and spoke on behalf of DPS using an interpretation inconsistent with AG Opinion 14-02." *Id*., *at ¶ 518.* Plaintiff characterizes Defendant Chavez's conduct as "deficient," and his "misunderstanding or misstatement of governing legal standards" as "significant." *See id.*, *at ¶¶ 271, 267.* Plaintiff is thus suing Defendant Chavez "in his individual capacity for acts taken prior to March 15, 2025." *Id., at ¶ 91.*

While Plaintiff makes these allegations against Defendant Chavez, Plaintiff does not allege, with specificity, Defendant Chavez's involvement in the events that give rise to each of his fifteen (15) claims against DPS Defendants collectively. *See generally Plaintiff's Complaint*. Plaintiff's claims against DPS Defendants assert various First, Second, and Fourteenth Amendment rights violations. *See id.* Plaintiff's First Amendment claim alleges that Defendants "escalated their litigation posture" and "intensified their effort to shape the administrative record." *Id.*, *at ¶¶*

*669-670.* Plaintiff asserts this was a result of his December 23, 2025, notice of non-participation and intent to challenge the DPS proceeding in federal court. *See id., at ¶ 668.* Plaintiff's Second Amendment claim alleges that Defendants' revocation of his CHL "imposed a direct and continuing burden on Plaintiff's right to keep and bear arms." *Id., at ¶ 555.* Plaintiff's remaining claims are numerous allegations of due process violations under the Fourteenth Amendment. *See id., at pp. 47-56, 57-64.* Plaintiff asserts in these claims that Defendants "deprived Plaintiff of [a vested property] interest without constitutionally adequate procedures," "deprived Plaintiff of a neutral tribunal" due to the structure of DPS's appeal process, and "nullified the legal effect of [California's] final judicial determinations and re-imposed penalties and disabilities the California court had removed." *Id., at ¶¶ 560, 592, 621.*

Defendant Chavez had no participation in the actual revocation of Plaintiff's CHL. *See id., at ¶ 488.* Defendant Chavez's involvement in Plaintiff's case with DPS only consisted of research on the validity of the revocation of Plaintiff's CHL, and his presence at one of the administrative hearings as DPS's legal counsel. *See id., at ¶ 91, 488.* Plaintiff does not allege Defendant Chavez's involvement in any of the other events described in his Complaint. *See generally Plaintiff's Complaint.* Nor does Plaintiff allege how any of Defendant Chavez's conduct caused the alleged violation(s) of his constitutional rights. *See id.*

## LEGAL ARGUMENT

I.    **PLAINTIFF FAILS TO OVERCOME DEFENDANT CHAVEZ'S QUALIFIED IMMUNITY DEFENSE.**

Often, Section 1983 liability and the defense of qualified immunity "travel hand-in-hand, and

when they do, [courts will] consider their substantive components together." Pahls v. Thomas, 718 F.3d 1210, 1227 (10th Cir. 2013). Thus, "although the requirement of personal participation is a component of liability under [Section] 1983 . . . [courts will] also incorporate it into [its] qualified-immunity analysis, where [it] ask[s] whether a clearly established constitutional right has been violated." Id. Accordingly, "to make out viable [Section] 1983 . . . claims *and* to overcome defendants' assertions of qualified immunity, plaintiffs . . .   must establish that each defendant-whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility-caused a violation of plaintiffs' clearly established constitutional rights . . . Failure to make this showing both dooms plaintiffs' [Section] 1983 . . . claims and entitles defendants to qualified immunity." Id. at 1228 (internal quotation marks omitted) (internal citations omitted).

"[Q]ualified immunity is an immunity from suit rather than a mere defense to liability." Brown v. Montoya, 662 F.3d 1152, 1162 (10th Cir. 2011) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pena Lee v. City of Las Cruces, 794 F. Supp. 3d 1058, 1074 (D.N.M. 2025) (internal quotation marks omitted) (internal citations omitted). After a defendant asserts a qualified immunity defense, "the burden shifts to the plaintiff, who must demonstrate on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct." Id. "This is a demanding standard" that a plaintiff may satisfy by "identifying an on-point Supreme

Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct." Id. at 1074-1075 (internal quotation marks omitted) (internal citations omitted). "The Tenth Circuit has explained: A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the particular conduct is clearly established." Id. at 1074 (internal citation omitted).

Here, Plaintiff does not satisfy his burden of demonstrating that Defendant Chavez's actions violated his constitutional rights. Plaintiff's Complaint generally hinges on the assertion that DPS's revocation of his CHL violated his Second Amendment right. *See generally Plaintiff's Complaint*. Plaintiff states that the revocation "imposed a direct and continuing burden on Plaintiff's right to keep and bear arms." *See Plaintiff's Complaint at ¶¶ 555*. However, the Second Amendment does not guarantee the right to a CHL free from restrictions. Accordingly, the State of New Mexico has implemented statutory restrictions for CHLs, and properly revoked Plaintiff's CHL. Plaintiff further alleges various violations of his First and Fourteenth Amendment rights, but does not demonstrate how any of Defendant Chavez's actions caused any of the alleged violations. *See generally Plaintiff's Complaint.* Because Plaintiff does not satisfy his burden of demonstrating that Defendant Chavez's actions violated his First, Second, or Fourteenth Amendment rights, Defendant Chavez is entitled to qualified immunity. Accordingly, all of Plaintiff's claims against Defendant Chavez should be dismissed.

8

### A. Plaintiff has no Second Amendment Right to Concealed Carry.

The Second Amendment does not provide an absolute right to a concealed carry license free from limitations. "The right secured by the Second Amendment is not unlimited." U.S. v. Rahimi, 602 U.S. 680, 690 (2024) (quoting District of Columbia v. Heller, 554 U.S. 570, 626 (2008)). To justify the restriction of the Second Amendment right, "the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'" Id. at 689 (quoting New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 24 (2022)). "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." Id. at 690. In the 1700s and early 1800s, two distinct legal regimes were developed that specifically addressed firearms violence. Id. at 694-95. First, surety laws "provided a mechanism for preventing violence before it occurred" by targeting the misuse of firearms, authorizing the arrest of "all who go armed offensively [and] require of the offender to find sureties for his keeping the peace." Id. at 696-97 (internal quotation marks omitted). Second, "going armed" laws punished those who had menaced others with firearms, by prohibiting "riding or going armed, with dangerous or unusual weapons, [to] terrify the good people of the land," punishing these acts with forfeiture of arms. Id. at 697 (internal quotation marks omitted). "Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." Id. at 698. Modern day statutes need not be identical to these founding era regimes, as the "prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." Id. at 698. As such, it is

well within the Government's authority to restrict the possession of firearms when an individual poses a risk to others.

Consistent with the Supreme Court's previous rulings, New Mexico has established several limitations on its firearm laws, including the concealed carry of a firearm under New Mexico's Concealed Handgun Carry Act (CHCA). *See* NMSA 1978 § 29-19-1. NMSA 1978 Section 29-19-4 states that to be issued a CHL under the CHCA, the applicant must have not "been convicted of a felony in New Mexico or any other state or pursuant to the laws of the United States or any other jurisdiction" or "been convicted of a misdemeanor offense involving assault, battery or battery against a household member." NMSA 1978 § 29-19-4(A)(5), (B)(4). "[DPS] shall suspend or revoke a [CHL] if . . . the licensee did not satisfy the criteria for issuance of a [CHL] at the time the license was issued." NMSA 1978 § 29-19-6(I)(2). Plaintiff does not dispute his guilty plea to or conviction of assault with a deadly weapon in California in 1997, but instead argues that because a dismissal was granted, he should not be disqualified from obtaining a CHL. *See Plaintiff's Complaint at  ¶¶ 121-141. "Under* longstanding New Mexico precedent, a 'conviction' refers to the finding of guilt by plea or by verdict and does not require the imposition of a sentence," for the purposes of the CHCA. Benns v. New Mexico Dep't of Pub. Safety, 2022-NMCA-050, ¶ 10, 517 P.3d 273, 277. Under the CHCA, even though a criminal charge is dismissed after a defendant has completed the period of deferment, the "conviction" remains. *See* id. As such, Plaintiff's conviction of assault with a deadly weapon remains even after dismissal. Plaintiff is thus disqualified from obtaining a CHL in New Mexico under NMSA 1978, Section 29-19-4, under either subsection (A)(5) or subsection (B)(4), regardless of whether the conviction of the "wobbler" offense was a felony or misdemeanor.

Since Plaintiff did not meet the criteria for issuance of a CHL at the time his license was issued, the Department properly revoked his license pursuant to NMSA 1978, Section 29-19-6(I)(2). Because Plaintiff has no Second Amendment right to a CHL, he cannot satisfy his burden of demonstrating a violation of his Second Amendment right by Defendant Chavez. Defendant Chavez is thus entitled to qualified immunity. Accordingly, Plaintiff's Second Amendment claim against Defendant Chavez should be dismissed.

### B.    *Plaintiff has No First or Fourteenth Amendment Right to Well-Prepared Opposing Counsel.*

Plaintiff has no constitutional right to well-prepared opposing counsel. In Plaintiff's sixty-six (66) page amended complaint, Defendant Chavez is specifically named only a number of times. *See generally Plaintiff's Complaint.* Plaintiff's allegations against Defendant Chavez concern his role as DPS's legal counsel. *See Plaintiff's Complaint at ¶¶ 238-271.* Specifically, Plaintiff alleges that Defendant Chavez was generally ill-prepared for and ill-informed on Plaintiff's case at the October 22, 2024, administrative hearing. *See id.* Plaintiff states that, during this administrative hearing, it became apparent that Defendant Chavez had not reviewed Plaintiff's summary-of-evidence binder prior to the hearing. *See id.*, at ¶ 260. Plaintiff further alleges that Defendant Chavez misunderstood or misstated governing legal and procedural standards at this hearing. *See id., at ¶ 267.* At most, Defendant Chavez's conduct may be considered unpreparedness in his role as DPS's legal counsel.

Defendant Chavez's unpreparedness as DPS's legal counsel does not rise to that of a constitutional violation. There is no United States Supreme Court or Tenth Circuit case that holds that an individual is entitled to well-prepared *opposing* counsel, and certainly neither the First nor

11

Fourteenth Amendment guarantee such. Even if Defendant Chavez's ignorance of Plaintiff's case and the relevant laws and procedures was "significant" as Plaintiff describes, Plaintiff fails to identify any "on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of [Defendant Chavez]'s conduct." As such, Plaintiff cannot satisfy his burden of demonstrating a violation of his First or Fourteenth Amendment rights by Defendant Chavez. Defendant Chavez is thus entitled to qualified immunity. Accordingly, Plaintiff's First and Fourteenth Amendment claims against Defendant Chavez should be dismissed.

## II.    PLAINTIFF FAILS TO ESTABLISH DEFENDANT CHAVEZ'S PERSONAL PARTICIPATION IN THE ALLEGED CONSTITUTIONAL VIOLATIONS.

Plaintiff does not establish Defendant Chavez's personal participation in any constitutional violation. Individual liability of a government official under Section 1983 must be based on personal involvement in the alleged constitutional violation. *See* Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). The Tenth Circuit has made clear that, "in the context of a [Section] 1983 action against multiple individual governmental actors, it is particularly important that the complaint make clear exactly who is alleged to have done what to whom." Stepp v. Lockhart, 168 F.4th 1286, 1300 (10th Cir. 2026). The need for individualized allegations is especially important where each defendant has different powers and duties. *See* Brown v. Montoya, 662 F.3d 1152, 1165 (10th Cir. 2011). When various officials have taken different actions with respect to a plaintiff, a plaintiff "must do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations. They must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory

12

responsibility, that violated their clearly established constitutional rights." Pahls v. Thomas, 718 F.3d 1210, 1228 (10th Cir. 2013) (internal quotation marks omitted) (internal citations omitted). "If the Court is to hold [a government official] personally liable for violating a citizen's constitutional rights, the Court needs the evidence to provide a sound basis for concluding [the official] is the one who violated the Constitution." Sisneros v. City of Albuquerque, No. Civ. 02-1035 JB/KBM, slip op. at 14 (D.N.M. filed Nov. 7, 2003) [Doc. No. 35]. Here, Defendant Chavez did not personally participate in any of the alleged violations of Plaintiff's constitutional rights.

To begin, Defendant Chavez did not personally participate in the alleged violation of Plaintiff's Second Amendment right. Plaintiff admits that Defendant Chavez was not involved in the final revocation decision. *See Plaintiff's Complaint at ¶ 488.* Even if this court were to rule that the revocation of Plaintiff's CHL was a violation of his Second Amendment right, Defendant Chavez certainly was not involved in that action. *See id.*

Defendant Chavez also did not personally participate in the alleged violation of Plaintiff's First Amendment right. Plaintiff's First Amendment claim alleges that Defendants "escalated their litigation posture" and "intensified their effort to shape the administrative record" in a way that "would chill a person of ordinary firmness from exercising the right to petition the government and seek federal judicial review." *Id*., at ¶¶ *669-670, 678.* Plaintiff alleges this came after his "December 23, 2025 notice of non-participation assert[ing] jurisdictional, statutory, and constitutional objections" and notice "that the proceeding would be challenged in federal court." *Id.*, at ¶ *668.* Plaintiff's complaint clearly states that Defendant Chavez "is sued in his individual capacity for acts taken *prior to March 15, 2025,"* whereas the alleged violation of Plaintiff's First Amendment right

occurred after December 23, 2025. *See id. at ¶ 91* (emphasis added); *See also id. at ¶¶ 668-670.* Defendant Chavez cannot be said to have personally participated in the alleged violation of Plaintiff's First Amendment right where Plaintiff does not claim such.

Finally, Defendant Chavez did not personally participate in the alleged violation of Plaintiff's Fourteenth Amendment right. Plaintiff raises both procedural and substantive due process claims, neither of which Defendant Chavez personally participated in. Plaintiff's allegations against Defendant Chavez amount to no more than unpreparedness as DPS's Chief Legal Counsel. Again, there is no constitutional provision, United States Supreme Court case, or Tenth Circuit case that holds that an individual is entitled to well-prepared opposing counsel for the purposes of due process. Defendant Chavez's conduct, as ill-informed and ill-prepared as it may have been, does not rise to a due process violation under the Fourteenth Amendment. As such, Defendant Chavez had no personal participation in any alleged violation of Plaintiff's Fourteenth Amendment right. Plaintiff does not demonstrate Defendant Chavez's personal participation in any of the alleged constitutional violations, as required in all Section 1983 claims. Accordingly, all claims against Defendant Chavez should be dismissed.

## CONCLUSION

Plaintiff fails to state a claim upon which relief can be granted against Defendant Chavez. Based on the facts alleged in his Amended Complaint, Plaintiff fails to overcome Defendant Chavez's qualified immunity defense. Plaintiff also does not establish Defendant Chavez's personal participation in any of the alleged constitutional violations. Because Plaintiff does not plead factual content that allows the court to draw the reasonable inference that Defendant Chavez is liable for

the misconduct alleged, Defendant Chavez is entitled to dismissal of all claims against him.

WHEREFORE, Defendant Chavez requests the Court grant his Motion to Dismiss, dismiss all claims against him, award Defendant Chavez his costs and attorney's fees, and grant all other relief this Court deems just and proper.

Respectfully submitted,

**ROBLES, RAEL & ANAYA, P.C.**

By:    /s/ Luis Robles
       Luis Robles
       Attorney for Defendant
       500 Marquette Ave. NW, Suite 700
       Albuquerque, NM 87102
       (505) 242-2228
       (505) 242-1106 (facsimile)
       luis@roblesrael.com

I hereby certify that the foregoing was electronically filed through the CM/ECF on this 22nd day of June 2026, which will cause service to the following:

Kevin Dale Kerst
P.O. Box 144
Whites City, NM 88268
(575) 499-8338
Roadrescue11@gmail.com

*Pro Se Plaintiff*

and

15

Jared D. Najjar
Bryan Gogarty
Kimberly L. Martinez
Jessica L. Nixon
Dillon R. Fisher-Ives
Virtue & Najjar
P.O. Box 22249
Santa Fe, New Mexico 87502-2249
(505) 982-8514
jnajjar@virtuelaw.com
bgogarty@virtuelaw.com
kmartinez@virtuelaw.com
jnixon@virtuelaw.com
dfisher-ives@virtuelaw.com

*Attorneys for State Defendants*

Mark D. Jarmie
Jarmie & Associate, LLC
514 Marble Ave. NW
Albuquerque, NM 87102
(505) 243-6727
mjarmie@jarmielaw.com

*Attorney for Defendant Joan Waters*

*/s/* Luis Robles
Luis Robles